# BAETZ *v.* KUKKUCK.

---

**PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.**

In an interference involving a feed mechanism for drying apparatus, a decision of the Commissioner of Patents awarding priority to the senior party was *affirmed,* where it appeared, among other things,

that although the junior party was the first to conceive, his application was filed during the taking of testimony in an infringement suit between himself and the senior party, involving a patent which had been granted the junior party, at which time he obtained knowledge of the device of the senior party; that the question in the interference was whether the junior party reduced to practice by means of two devices made by him; and the evidence showed that the making of the devices amounted to nothing more than experimental tests, shown by his subsequent actions not to be satisfactory to him.

No. 749. Patent Appeals. Submitted March 12, 1912. Decided April 1, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. Vernon M. Dorsey* for the appellant.

*Messrs. Howson & Howson* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding involving an invention of a feed mechanism for drying apparatus.

The issue of the interference is in ten counts, of which the first, fourth, and tenth sufficiently indicate the structure involved:

"1. A feed mechanism comprising a pair of juxtaposed conveyors, and having transverse rib formations between which the articles may be confined, and means disposed along the length of the conveyors for keeping the adjacent laps of said conveyors spaced permanently apart, substantially as set forth."

"4. A feed mechanism comprising a pair of juxtaposed conveyors having transverse ribs or bars spaced suitable distances apart, the material treated being inserted between the adjacent laps of the conveyors and confined between the aforesaid trans-

verse formations, and means at opposite ends of the transverse formations for permanently keeping the adjacent laps of said conveyors spaced a suitable distance apart, substantially as set forth."

"10. A feed mechanism comprising a pair of transversely slatted sections traveling conjointly and in juxtaposition and closed on the sides, the transverse formations of the respective sections being permanently spaced apart, substantially as set forth."

The application of Frederick Kukkuck was filed September 13, 1906, and that of Henry Baetz November 22d, 1907.

The structures of the parties on which the counts read are designed for drying thin sheets of wood known as veneer, which, cut from moist wood, are carried through heated air until sufficiently dried for use. The sheets of wood vary in thickness and moisture. When thin and the moisture considerable, the manner of distributing the heated air, and the manner in which the sheets are held or confined on the feed mechanism, is of material importance. As aptly stated in the decisions of the Patent Office tribunals, all of which concurred in awarding priority to Kukkuck:" The gist of the invention in issue consists in providing means for confining the material between conveyors having transverse rib formations in such a way that the material is permitted to shrink freely to prevent checking or cracking and yet be restrained sufficiently to preclude warping."

Baetz has a patent for a structure used in drying veneer, issued November 13, 1906. The Philadelphia Textile Machinery Company, assignee of Kukkuck, has been engaged in the manufacture and sale of drying mechanisms under older patents. In January, 1907, Baetz filed a bill against Kukkuck in the circuit court of the United States for the eastern district of Missouri, alleging infringement of his older patent aforesaid. By stipulation, the testimony taken in that case, which has not been heard, was filed as the testimony of the parties in this proceeding. A great deal of this testimony has no importance bearing on the questions involved herein.

During the taking of that testimony Baetz obtained knowl-

edge of the device of Kukkuck, and immediately filed the application of this interference.

The point made in the first reason of the appeal, that the invention disclosed in Kukkuck's application is different from that of the issue and from his amendment thereto, made July 15, 1908, is completely answered by the decision of the Office, and requires no further discussion.

While there was evidence tending to show that Kukkuck conceived the invention and reduced it to practice considerably before the filing of his application for patent, the Office tribunals found it unnecessary, in their view of the testimony, to determine that date, and awarded him the date of filing, September 13, 1906, as establishing his constructive reduction to practice. They found that Baetz was the first to conceive the invention. The case was made to turn upon the question whether Baetz reduced the invention to practice by means of two devices. One of these is called the "gate conveyor," the other, the "finger conveyor." Baetz undertook to prove that the gate conveyor was successfully tested in the spring of 1904, and the finger conveyor in May, 1905. His contention rests chiefly on the evidence relating to the finger conveyer.

The tribunals of the Office concurred in holding that the evidence was not sufficient to show that these experimental tests were satisfactory, and that Baetz's subsequent action showed that they were not considered satisfactory by him. In other words, after these experiments he abandoned this feature of the device. This conclusion is thus stated in the Commissioner's decision.

"It is believed that the testimony offered is wholly insufficient to show that either of these devices was a reduction to practice of the invention. If there were any doubt on the matter, however, it would have to be resolved adversely to Baetz, in view of his subsequent conduct. The gate conveyer was immediately dismantled after the test and was never again used or reproduced. The finger conveyor was also dismantled, and while Baetz claims that it was on the strength of the results of this machine that he obtained an order from the St. Louis

Basket & Box Company for a similar drier, it is significant that the drier which he thereafter produced for them, the so-called "Basket & Box Company drier," did not contain the invention in issue. It lacked the spacing devices. The same is true of the next drier built by Baetz, known as the "1905 drier," which was completed about February, 1906. In July, 1906, Baetz filed an application for a patent on a similar drier, which also failed wholly to mention the spacing devices. This application matured into Patent No. 835,843. The Basket & Box Company drier attempted to attain the results flowing from the use of the spacing devices by stretching the lower run of the upper conveyor to such a degree as to relieve the pressure on the veneer. Baetz testified that this resulted in frequent breaking of the chains which held the slats. Notwithstanding his claim that the test of the spacing devices in the earlier machines proved their value to perform this function, he attempted to overcome the difficulty caused by the breaking of the chains in the Basket & Box Company drier by reducing the length of the conveyors from 100 to 28 feet, thereby sacrificing nearly three quarters of the capacity of the machine. This was the construction of the 1905 drier, and the one which he thereafter attempted to put upon the market. He seems to have entirely forgotten the use of the spacing devices until his attention was called thereto by the emphasis laid on this feature in the testimony taken by Kukkuck in an infringement suit pending in the Federal court at St. Louis. This occurred in the fall of 1907, and very shortly thereafter Baetz's application for this invention was filed in the Office."

After an examination of the evidence in the light of the printed argument on which the case was submitted by counsel for Baetz, we have found no error in the conclusion of the Commissioner on this point. The decisions of the Commissioner and of the other tribunals review the questions involved so fully that there is no occasion to add anything thereto. The decision will be affirmed, and this decision certified to the Commissioner of Patents.                    *Affirmed.*